IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JULIE P.,

        **Plaintiff,**

  v.                                 Civil Action 2:21-cv-4170
                                            Judge Sarah D. Morrison
                                            Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Julie P., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on July 2, 2018, alleging that she was disabled beginning January 1, 2015 (later amending her onset date to July 4, 2018), due to anxiety, depression, spinal stenosis, asthma, a blocked nose canal, hearing loss and migraine headaches. (Tr. 969–77, 1073). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on July 14, 2020, before denying Plaintiff's applications on August 26, 2020. (Tr. 521–46, 494–516). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 477–81).

Next, Plaintiff filed this action. (Doc. 1). As required, the Commissioner filed the administrative record (Doc. 6), and the parties briefed the issues, (Docs. 11, 12, 13). The matter is ripe for review.

### A. Relevant Statements

The ALJ summarized Plaintiff's statements and background:

> [Plaintiff] testified to experiencing about 12 to 16 migraines every month that can last from 4 to 27 hours in duration. During her migraines, she testified that she lays down for long periods or moves around. She testified to having shoulder surgery and having strength deficits in her left upper extremity that limit her ability to lift more than approximately 10 pounds and reach overhead. Mentally, she testified and reported isolating herself from others and having difficulty with her concentration and memory (Exhibit B5A, Hearing Testimony).

(Tr. 503–04).

### B. Relevant Medical History

The ALJ summarized Plaintiff's medical records as to her physical impairments:

> The medical record documented [Plaintiff] with cervical degenerative disc disease (Exhibit B8F/26, 28). A December 2017 MRI of the cervical spine showed moderate to severe stenosis in the C6-C7 levels (Exhibit B8F/6, 28). [Plaintiff] had a cervical anterior discectomy fusion in March 2018 and was noted to be recovering well, without signs of complications during follow up visits with her Primary Care Physician (Exhibit B8F/8, B9F/45, 46). During a follow up visit with her orthopedist in July 2018, the clamant reported mild to moderate neck pain and denied any recurrence of radicular upper extremity symptoms (Exhibit B8F/18). On examination, she exhibited normal motor strength bilaterally in the upper extremities and updated diagnostic imaging showed all instrumentation to be in appropriate position (Exhibit B8F/18, B12F/37). She returned to her orthopedist in February 2019 and again reported no recurrence of radicular arm pain with some tightness in her neck (Exhibit B28F/1). She was assessed to be stable with updated diagnostic imaging of her cervical spine showing no evidence of complications (Exhibit B28F/1). Consistent with this evidence, [Plaintiff]'s clinical examination findings showed no evidence of any significant motor strength, sensation, reflex or gait deficits and she continued to report doing well after her spinal surgery (Exhibit B27F/17-18, B28F/1, B32F/2, B41F/1). ***
>
> [Plaintiff] continued to report migraine headaches throughout the relevant period. A review of the medical record indicated that her migraine headaches generally improved with Botox injections, including a noted decrease in the frequency of her migraine headaches (Exhibit B18F/1, B25F/20, B26F/5, B27F/12). Notably,

> [Plaintiff]'s treatment history documented routine treatment involving Botox injections with sparse evidence of significant symptoms, such as laying down for extended periods (Exhibit B13F/22, B18F/1, B25F/20, B26F/5, B38F/1).
>
> Consistent with this evidence, [Plaintiff]'s neurologist recently stated that [Plaintiff]'s migraine headaches do not warrant disability (Exhibit B38F/1). A light residual functional capacity with the postural and environmental limitations enumerated above have been provided to accommodate her migraine headaches.
>
> [Plaintiff] had a consultative physical examination in October 2018 and reported minimal neck pain and persistent headaches (Exhibit B20F/1). On examination, she displayed normal motor strength in the upper and lower extremities, intact reflexes and sensation, normal grip strength and normal range of motion in the upper and lower extremities and spine and a normal gait with the use of an assistive device (Exhibit B20F/2-8). Additionally, she reported she could use buttons, zippers and open door knobs (Exhibit B20F/1). [Plaintiff] was not diagnosed with any physical impairments (Exhibit B20F).

(Tr. 504–05).

    **C.**    **The ALJ's Decision**

The ALJ found that Plaintiff last met the insured status requirement through March 31, 2019, and she has not engaged in substantial gainful employment since the alleged onset date. (Tr. 500). The ALJ determined that Plaintiff has the following severe impairments: cervical degenerative disc disease; migraine headaches/tension headaches; generalized anxiety disorder; post-traumatic stress disorder (PTSD); bipolar II disorder; and major depressive disorder without psychotic features. (*Id.*). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 501).

The ALJ assessed Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally lift/carry or push/pull 20 pounds and frequently lift/carry or push/pull 10 pounds; [Plaintiff] can stand and walk six hours of an eight hour workday and can sit for six hours of an eight hour workday; [Plaintiff] can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds; [Plaintiff] can frequently balance and occasionally kneel, crouch and crawl; [Plaintiff] can never reach overhead bilaterally; [Plaintiff] can tolerate frequent exposure to dust, odors, fumes and

3

> pulmonary irritants; [Plaintiff] can have no exposure to unprotected heights and should not drive commercially; the clamant can perform simple, routine and repetitive tasks (unskilled work) with no production rate pace (such as no assembly line work); [Plaintiff] can have occasional interaction with supervisors, coworkers and the public; [Plaintiff]'s interaction with co-workers and the public needs to be superficial (meaning causal small talk about sports or weather but no customer service duties, conflict resolution or persuading others) and only occasional changes in the workplace.

(Tr. 503).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that they are not consistent with the medical record and totality of evidence. (Tr. 504). The ALJ also noted, "the medical record documented noted improvement in the frequency of her migraine headaches and sparse evidence of significant symptoms related to the condition. Additionally, her consultative physical examination was conservative, including normal motor strength in the upper and lower extremities, intact reflexes and sensation, normal grip strength and normal range of motion in the upper and lower extremities. Similarly, her clinical examination findings did not document any significant musculoskeletal or neurological deficits." (*Id.*).

The ALJ determined that Plaintiff has no past relevant work based on the previous hearing decision issued July 3, 2018. (Tr. 507 (citing Tr. 712–32)). Relying on the testimony from a Vocational Expert ("VE"), the ALJ determined that given Plaintiff's age, education, work experience and RFC, she was able to perform work that existed in significant numbers in the national economy, such as a mail clerk, cafeteria attendant, and inspector and hand packager. (Tr. 508). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act during the relevant period. (Tr. 509).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is

4

supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises two assignments of error. First, she says the RFC is not supported by substantial evidence because the ALJ failed to properly weigh the opinion evidence of Dr. Ueberroth, her treating neurologist. (Doc. 11 at 8–11). Next, Plaintiff says the limitation on the President of the United States' power to remove the Commissioner of Social Security is unconstitutional, and thus, the Commissioner's delegation of power to the ALJ was defective. (*Id.* at 12–16).

### A. Residual Functional Capacity

Plaintiff contends the ALJ improperly weighed the medical opinion evidence of Dr. Ueberroth regarding her migraine headaches. Thus, she says, the RFC is not supported by substantial evidence. Since Plaintiff's challenge is limited to the ALJ's evaluation of her migraine headaches, the Undersigned's evaluation is similarly limited.

#### 1. Standard for Evaluating the Residual Functional Capacity

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and

mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Still, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

When determining the RFC, the ALJ is charged with evaluating several factors, including the medical evidence (not limited to medical opinion testimony) as well as the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). The RFC assessment must be based on all the relevant evidence in her case file. 20 C.F.R. § 416.945(a)(1).

Here, Plaintiff filed her application after May 23, 2017, so it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). Taken together, the regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

---

[1] The regulations define prior administrative findings:
  A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and

Regarding two of these categories (medical opinions and prior administrative findings), an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). An ALJ may discuss how she evaluated the other factors but is not generally required to do so. *Id*.

So the ALJ's role is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

---

psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .
§§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

### 2. *ALJ's Residual Functional Capacity Evaluation*

The ALJ determined that Plaintiff had "the residual functional capacity to perform light work" with postural and environmental limitations that accommodate her migraine headaches. (Tr. 505). Limitations such as:

> [Plaintiff] can stand and walk six hours of an eight hour workday and can sit for six hours of an eight hour workday; [Plaintiff] can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds; [Plaintiff] can frequently balance and occasionally kneel, crouch and crawl; [Plaintiff] can never reach overhead bilaterally; [Plaintiff] can tolerate frequent exposure to dust, odors, fumes and pulmonary irritants; [Plaintiff] can have no exposure to unprotected heights and should not drive commercially; the clamant can perform simple, routine and repetitive tasks (unskilled work) with no production rate pace (such as no assembly line work); [Plaintiff] can have occasional interaction with supervisors, coworkers and the public; [Plaintiff]'s interaction with co-workers and the public needs to be superficial (meaning causal small talk about sports or weather but no customer service duties, conflict resolution or persuading others) and only occasional changes in the workplace.

(Tr. 503).

The ALJ's role is to determine the RFC based on her evaluation of medical and non-medical evidence. "Ultimately, 'the ALJ must build an accurate and logical bridge between the evidence and his conclusion.'" *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020) (quoting *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019)). That is what the ALJ did here.

#### i. *Evaluation of Treatment History and Hearing Testimony*

First, the ALJ considered Plaintiff's treatment history and hearing testimony. (Tr. 503–05). The ALJ noted that Plaintiff reported migraine headaches throughout the relevant period. (Tr. 504). The ALJ emphasized that the record indicated Plaintiff's migraine headaches improved and decreased in frequency due to Botox injections. (Tr. 504 (citing Tr. 1658, 1943, 1965, 1977)).

8

The relied-upon records span from August 2018 through January 2020. They indicate that with Botox injections, the frequency of Plaintiff's migraines decreased from 30 per month to 10 to 12 per month and that Plaintiff reported condition improvement. Most of these records are from Plaintiff's neurologist Dr. Ueberroth (Tr. 1943, 1977; *see also* Tr. 1976), but also include records from an optometrist Plaintiff saw presumably in connection with her migraines (Tr. 1965). The ALJ further considered that Plaintiff's treatment history documents routine treatment with Botox and sparse evidence of significant symptoms, such as lying down for extended periods. (Tr. 504). The ALJ specifically mentions lying down for long periods because that is what Plaintiff said she did to alleviate her headaches during the hearing testimony. (Tr. 503, 537). Plaintiff also said she moved around when she had a migraine headache. (Tr. 503, 537).

### ii. *Evaluation of Medical Opinion Evidence*

Next, the ALJ considered medical opinions of state agency medical consultants, Drs. Lewis and Sutherland, and Plaintiff's neurologist, Dr. Ueberroth. (Tr. 506–07). The ALJ found Drs. Lewis's and Sutherland's opinions to be persuasive but found Dr. Ueberroth's opinion unpersuasive. (*Id.*). Plaintiff disputes the determination that Dr. Ueberroth's opinion is unpersuasive. (Doc. 11 at 8–11).

<u>Drs. Lewis and Sutherland:</u> The ALJ found the state agency medical consultants' opinions, which considered Plaintiff's migraines, to be persuasive. (Tr. 506). Dr. Lewis's opinion was adopted by the ALJ in the RFC. (Tr. 788). When formulating the opinion, Dr. Lewis, considered in part, Plaintiff's migraine headaches—including a frequency of 12 per month, and Plaintiff's stated mitigation technique of lying down. (Tr. 765, 773, 776, 784). Similarly, Dr. Sutherland took into account Plaintiff's migraines in formulating the opinion which was ultimately adopted by the ALJ. (Tr. 818, 828–29, 834). The ALJ found these opinions to be persuasive because the

9

opinions are "supported with an in-depth explanation," and are consistent with the medical record. (Tr. 506 (citing Tr. 1982–83, 1984, 2393, 2796)).

*Dr. Ueberroth:* The ALJ then evaluated Dr. Ueberroth's opinion and found it to be less convincing. (Tr. 507). Dr. Ueberroth opined that due to Plaintiff's migraines, she would miss more than four days of work per month. (Tr. 507 (citing Tr. 2762)). The ALJ determined that this was not supported "by Dr. Ueberroth's own treatment record, which documented routine treatment involving Botox injections with sparse evidence of significant symptoms." (Tr. 507 (citing Tr. 1367, 1658, 1943, 1965, 2759)). These records reflect that Botox improved Plaintiff's condition and decreased her migraine frequency from 30 per month to 10 to 12 per month. The ALJ also mentioned that the opinion is not supported by Dr. Ueberroth's statement that Plaintiff's migraine headaches do not warrant disability. (Tr. 507). The opinion was also inconsistent, the ALJ said, "with evidence showing a noted decrease in the frequency of her migraine headaches and the claimant reporting noted improvement." (Tr. 507 (citing Tr. 1658, 1943, 1965, 1977)).

Plaintiff agrees that, at first blush, the ALJ's evaluation of Dr. Ueberroth's opinion seems to be supported by substantial evidence. (Doc. 11 at 9). But Plaintiff argues, on closer evaluation, the ALJ's evaluation of supportability and consistency are flawed. (*Id.*).

First, Plaintiff argues that the ALJ mischaracterized Dr. Ueberroth's treatment as conservative. (Doc. 11 at 9–10). Plaintiff seems to argue that had the ALJ properly considered the treatment, it would be more supportive of Dr. Ueberroth's more restrictive opinion. But Plaintiff is the one mischaracterizing the ALJ's opinion. The ALJ said Plaintiff's treatment was routine, not conservative. (Tr. 507). And routine treatment for a severe medically determinable impairment may be unsupportive of a more restrictive RFC. That is for the ALJ to determine. Further, Plaintiff's routine treatment is not the only reason the ALJ found the more restrictive

10

opinion to be unsupported. The ALJ also found the opinion unsupported by "sparse evidence of significant symptoms." (*Id.*).

Next, Plaintiff says that the ALJ did not consider significant symptoms such as nausea, vomiting, phonophobia, photophobia, throbbing pain, inability to concentrate, vertigo, pain with activity, and avoidance of activity. (Doc. 13 at 3). But critically, these symptoms were only detailed in Dr. Ueberroth's opinion statement, not in treatment records by Dr. Ueberroth over the duration of his treatment of Plaintiff, nor in treatment records of any other physician. And Plaintiff does not point to treatment records indicating that she reported these symptoms to her physicians. The ALJ could permissibly find Dr. Ueberroth's opinion unsupported and inconsistent with the lack of reported significant symptoms. Plaintiff also points to the sharp stabbing pain and numbness she experienced. (*Id.*). Yet, in the records, this pain is described as only lasting an instant and the numbness only minutes. (Tr. 1979, 1982–83). Thus, the ALJ was not wrong to view this pain as not work preclusive.

Plaintiff also says the ALJ erred when claiming that Dr. Ueberroth's opinion was inconsistent with records showing a decrease in frequency of her migraines to 10 to 12 per month because Dr. Ueberroth notes the same frequency. This argument seems to misunderstand the ALJ's evaluation. The ALJ is not saying Dr. Ueberroth's statement that Plaintiff suffers 10 to 12 migraines per month is inconsistent with records documenting the same. Rather, the ALJ says that Dr. Ueberroth's more restrictive opinion that Plaintiff will miss more than four days of work per month due to her migraines is inconsistent with Plaintiff's decreased frequency of 10 to 12 migraines a month. Again, the ALJ is charged with weighing the evidence, and this is a permissible exercise of that duty.

11

Finally, Plaintiff argues that it was improper for the ALJ to consider Dr. Ueberroth's statement that Plaintiff's migraine headaches do not warrant disability. (Doc. 507 (citing Tr. 2759)). The ALJ found this statement to be unsupportive of Dr. Ueberroth's restrictive opinion. (*Id.*). It is true that statements on whether an individual is disabled are neither valuable nor persuasive because that issue is reserved for the Commissioner. 20 C.F.R. § 404.1520b(c)(3). But the consequence of these kinds of statements is that the Commissioner does not have to "provide any analysis about how [he] considered such evidence." 20 C.F.R. § 404.1520b(c). The regulations do not, however, seem to prohibit the ALJ from considering such evidence. And the Undersigned identified no case standing for such proposition, nor does Plaintiff identify one. Moreover, the ALJ's evaluation of the persuasiveness of Dr. Ueberroth's opinion is based on more than just this statement, consequently the evaluation is still supported by substantial evidence.

In sum, the ALJ considered Dr. Ueberroth's medical opinion, evaluated it based upon Dr. Ueberroth's own treatment records and the records as a whole, and found it to be unpersuasive. The ALJ's discussion allowed the Undersigned to determine if the proper factors, supportability and consistency, were considered and conclude that the ALJ's determination is supported by substantial evidence. Thus, the ALJ's evaluation of Dr. Ueberroth's opinion is not erroneous.

        3.    *ALJ's Residual Functional Capacity Determination*

At base, it seems Plaintiff wanted the ALJ to find the frequency of Plaintiff's migraines to be more limiting than the ALJ concluded it to be in the RFC. During the hearing testimony, Plaintiff's counsel specifically mentioned the frequency of Plaintiff's headaches being a main theory for her inability to work at any exertional level. (Tr. 528–29). Plaintiff then challenged the discounting of Dr. Ueberroth's opinion based in large part on the ALJ finding that frequency of 10 to 12 migraines a month is not supportive or consistent with Plaintiff missing more than four days of work per month. (Docs. 11 at 11, 13 at 4–5). But the ALJ considered the frequency of Plaintiff's

12

migraines and crafted the RFC with that in mind. (Tr. 503–507). At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

Ultimately, it is the ALJ who has the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). Here, the ALJ's analysis of Plaintiff's RFC allowed the Court to conduct a review of the decision. The ALJ built a logical bridge between the evidence, including Plaintiff's medical records and medical opinions, and her conclusion, and the RFC reflects limitations due to Plaintiff's migraines including environmental and postural limitations. There was no error.

### B.     Separation of Power

Plaintiff also contends that remand is required because a statute that provided tenure protection to the former Commissioner of Social Security, Andrew Saul, violated the separation of powers doctrine, and therefore, the decision to deny her benefits was made by individuals who lacked a proper delegation of power to make benefits determination. This contention lacks merit.

### 1.     *Plaintiff's Constitutional Claim is Procedurally Improper*

As an initial matter, the claim is procedurally improper. Plaintiff's Complaint does not

include any Constitutional claims. (Doc. 4). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. Here, the United States Supreme Court case upon which Plaintiff bases her Constitutional claim was decided on June 20, 2020. Yet Plaintiff gave no notice, let alone fair notice, of her Constitutional claim in her August 16, 2021 Complaint. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same). For that reason, she failed to comply with Rule 8.

        2.      *Plaintiff's Constitutional Claim Lacks Merit*

But even if Plaintiff's Complaint was rule compliant, her Constitutional claim lacks substantive merit. Removal of the Commissioner is governed by 42 U.S.C. § 902(a)(3) which provides that the Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty, malfeasance in office." *Id*. The parties agree that two recent United States Supreme Court cases cast doubt on the constitutionality of that provision.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court held that a provision that allowed the president to remove the Director of the Consumer Financial Protection Bureau ("CFPB") only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers doctrine by insulating the director from removal

14

by the President. 140 S.Ct. 2183, 2197 (2020). In *Collins v. Yellin*, decided one year later, the Supreme Court held that a provision limiting the President to removing the Director of the Federal Housing Finance Agency ("FHFA") only for cause similarly violated the separation of powers doctrine. 141 S.Ct. 1761, 1783 (2021) (holding that "*Seila Law* is all but dispositive"). Plaintiff asserts that like the Directors of the CFPB and the FHFA, the Commissioner of Social Security is a single officer at the head of an administrative agency, and therefore, §902(a)(3)'s attempt to impose any restraints on the President's power to remove the Commissioner also violates the separation of powers doctrine. (Docs. 11 at 12–13, 13 at 8). The Commissioner agrees. (Doc. 12 at 3–4) (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)).

Plaintiff further asserts that because this removal provision is unconstitutional, any delegations of power by Former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined her benefits claims, were invalid. (Doc. 11 at 12–13). The Commissioner contends that Plaintiff's argument fails because the ALJ who determined Plaintiff's claim on August 26, 2020, held office on that date, not because of a delegation of authority from Former Commissioner Saul, but because of a ratification of delegated authority in July 2018,[2] by Former Acting Commissioner Nancy Berryhill. (Doc. 12 at 6). And the Commissioner correctly notes that an Acting Commissioner is not subject to § 902(a)(3)'s removal provision, and therefore that provision's constitutionality, or lack thereof, is irrelevant. *See*

---

[2] In *Lucia*, the Supreme Court found that the United States Security Exchange Commission (SEC) ALJs were "inferior officers" under the Appointments Clause, U.S. Const. art II, § 2, cl. 2, and therefore, had to be appointed by a President, a court, or the head of an agency instead of lower-level staff. *Lucia v. S.E.C.*, 138 S.Ct. 2044, 2051 (2018). Although *Lucia* involved ALJs at the SEC, on July 16, 2018, Acting Commissioner Berryhill ratified the appointment of the Social Security Administration's ALJ's and administrative appeals judges who were previously appointed by lower-level staff in response to the ruling in *Lucia*. See SSR 19-1p, 84 Fed Reg. 9582, (2019).

*Collins*, 141 S.Ct. at 1781 (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.") (emphasis in original).

Nevertheless, Plaintiff asserts that the ALJ and the Appeals Council adjudicated her disability application pursuant to a delegation of authority from Former Director Saul. (Doc. 11 at 13). The Court need not resolve this factual dispute but finds instead that even if Former Director Saul appointed the ALJ and Appeals Council judges who determined Plaintiff's benefits claim, the constitutionality of § 902(a)(3) would not warrant remand for several reasons.

First, even if the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived Former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. As the Supreme Court noted in *Seila Law*, "one section of a statute may be repugnant to the Constitution without rendering the whole act void." 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Indeed, even in the absence of a severability clause, when "confronting a constitutional flaw in a

16

statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)). For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245. Such is the case here. If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec*., Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec*., 2021 WL 5356719, *8 (same).

In addition, even if the removal provision in § 902(a)(3) is unconstitutional, that would not have automatically rendered Former Commissioner Saul's appointment invalid, and thus, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations. In *Collins*, the Supreme Court found the unconstitutional removal provision did not render the FHFA's appointments invalid, and thus did not automatically void the FHFA's actions under the Director. 141 S.Ct. 1787 ("Although the statute unconstitutionally limits the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [that were challenged on appeal] as void."). Accordingly, infirmities in removal provisions do not automatically void

17

appointments or actions taken by properly appointed officials. *Alice A. v. Comm'r of Soc. Sec.*, 2021 WL 5514434, *6 (finding that '[t]he infirm *removal* provision does not render Commissioner Saul's *appointment* invalid, which in turn does not render the ALJ's disability determination void.") (emphasis in original); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (finding that the unconstitutional "removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner").

Instead, to obtain reversal of an agency decision, a plaintiff must show "compensable harm" flowing from an unconstitutional removal clause. *Collins*, 141 S.Ct. 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the FHFA except for cause). Here, Plaintiff makes no such showing. Plaintiff asserts that her injuries flow from an illegitimate delegation of power resulting in an invalid adjudication and determination by the Appeals Council. (Doc. 13 at 6). In so doing, Plaintiff appears to conflate issues that might have presumably flowed from the unconstitutional *appointment* of Former Director Saul with a provision allowing for his unconstitutional *removal*. As explained above, however, appointments are not nullified by an unconstitutional removal provision. Nor are actions taken by a properly appointed official.

In short, Plaintiff has not pointed to a connection between any unconstitutional limit on Former Director Saul's removal and the ALJ's determination denying her benefits. *See also Calcutt v. FDIC*, No. 20-4303, 2022 WL 2081430, at *14–15 (6th Cir. June 10, 2022) (holding that "*Collins* [ ] provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party[,]" and "vague, generalized allegations" of harm do not demand relief); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) (finding that "there is no link between the ALJ's decision awarding

18

benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Nor is it likely that Plaintiff could do so, given that any particular ALJ or Appeals Council decision would not concern the President. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("The SSA has a single head with for-cause removal protection . . . But . . . I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit. Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, de facto officer, the rule of necessity, and other prudential considerations.

IV. **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

19

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: June 30, 2022                             /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE